SIMON WEBB v. THE STATE.

No. 1194.   Decided October 11, 1911.

**1.—Disturbing Religious Worship—Indictment.**

Where it appeared on appeal that some one put in pencil opposite the several counts in the indictment the numbers thereof, there was no reversible error, no injury having been shown.

**2.—Same—Charge of Court—Misdemeanor.**

In misdemeanor cases, unless the record shows that the appellant excepted to the charges of the court and requested special charges, the same can not be considered on appeal.

**3.—Same—Charge of Court—Harmless Error.**

Where the failure of the court to charge on a certain count in the indictment operated in favor of the defendant, there was no reversible error.

**4.—Same—Charge of Court—Burden of Proof.**

Where, upon trial for disturbing religious worship, the court's charge was not on the burden of proof or the weight of the evidence, there was error; besides, defendant did not except or submit special charges.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of disturbing religious worship, the evidence sustained the conviction, there was no error.

**6.—Same—Evidence—Animus—Contradicting Witness.**

Where, upon trial of disturbing religious worship, the testimony objected to was admitted for the purpose of showing the animus of defendant, and to disprove his contention that the disturbance was not wilfully done, there was no error.

**7.—Same—Bills of Exception.**

Where the bills of exception failed to show what the testimony was or the status thereof, there was nothing to review on appeal.

Appeal from the County Court of Smith.    Tried below before the Hon. J. A. Bulloch.

Appeal from a conviction of disturbing religious worship; penalty, a fine of $25.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted for disturbing religious worship.  The indictment contains three counts    Each count was by a separate paragraph, with the proper beginning and ending, showing clearly that it was a separate count, although not numbered so by the grand jury in returning the indictment.    The appellant was convicted and his penalty fixed at a fine of $25.

One point raised by him on this appeal is that some one, on the margin of the indictment, put in pencil opposite the several counts the figures 1, 2 and 3 in brackets.  Of course, there was no injury to the appellant in this, whoever placed it there.

The facts show that on the night of February 12, 1910, there was preaching at Sharon church in Smith County.  The preacher's name was R. E. Morris.  At the beginning of the service he invited all in the house to come up to the organ and assist in the singing.  The appellant and many others went up.  After singing a song or two the preacher asked the audience to stand in prayer with him.  The congregation, by all the testimony, was shown to have assembled for religious worship and were conducting themselves in a lawful manner.  The organ was near the pulpit close to the preacher.  During this prayer, led by the preacher while the congregation was standing, the appellant in a loud whisper said: "Oh, Lord, brother Ben shot a goose and killed a hen."   "Lord, take us and bind us, tie our shirt-tails behind us, put us behind the door where the devil can't find us."  During the prayer the appellant had a lamp in his hand which was used for the benefit of the organist in playing, so that the song and music could be seen.  He blew out the lamp while the prayer was going on and placed it upon the organ.

The appellant testified in his own behalf.  He denied being drunk or having drank any liquor at the church that night, but others testified that he took three or four drinks of whisky while at the church that night.  A short time after that he talked to some of the witnesses, and among them told one of them, after being informed what the witness was going to swear on the trial, that he, appellant, did not know what he said or did that night, that he was so drunk he could not remember what he did.  To another State witness, just before she was summoned before the grand jury, he tried to get her not to tell on him, and in a later conversation said to her he did not re-

member what he did that night. The whispering by appellant was louder after he blew out the light than it was before. The preacher who led the prayer testified that the interruption by the appellant was in a loud whisper, and it bothered him so much he had to cut his prayer short. He and others testified that what the appellant did and said disturbed them at the time. The preacher said that he could not distinguish very well under the circumstances what the appellant said, but he could only hear a word now and then, such as "shirt-tail," "behind the door," and "no more," and such words as that. Another witness testified that the appellant seemed to be furnishing fun for the choir on this occasion.

The testimony further shows that immediately after the preacher cut his prayer short and closed it he reprimanded severely the party or parties who were doing the whispering and causing the disturbance. That at once the appellant and another boy with him got up and walked out of the house, stopped just outside of the door, and began loud talking there which disturbed some of the congregation. All of the witnesses testified to this loud talking at the time just outside of the church. The boy who got up and went out of the church with the appellant at the time testified: "Judging from his (appellant's) appearance and conduct he was mad, and did all the talking. He would ask questions and I would simply answer them. "This talking caused such a disturbance that the preacher asked one of the congregation to go out and investigate and stop it. This party did so, and found the appellant just outside, and upon informing him that he was disturbing the congregation, and to desist, he and the boy with him went off further from the church and created no further disturbance.

Among other grounds, the appellant complains, in his motion for a new trial, that the court erred in not charging the jury upon the question of reasonable doubt and presumption of innocence. In misdemeanor cases the law is that this court will not consider any such assigned errors unless the appellant excepted to the charge of the court at the time, and requested special charges covering the point, which were refused by the lower court. Hence, there is no reversible error shown by this complaint.

Another complaint is that the court erred in failing to submit the third count of the indictment to the jury. This count charges a disturbance of the peace. The failure by the court to charge on it could not have injured the appellant, but on the contrary, if it affected him at all, would have been in his favor.

Another ground of complaint of the charge of the court is that the court erred in this portion of the charge: "Now, if you shall find from the evidence beyond a reasonable doubt that on or about the date alleged, in Smith County, Texas, and while a congregation was assembled at Sharon church for the purpose of religious worship, and

conducting themselves in a lawful manner, the defendant did wilfully disturb said congregation, or any part thereof, by loud and vociferous talking, or by putting out a light while a prayer was being said, or by saying a mock prayer during said religious services, then you will find defendant guilty, and assess a proper penalty therefor," "in that the court puts the burden upon the defendant to establish his innocence. That the court in this connection should have told the jury that in case they had a reasonable doubt as to whether or not the defendant did this, they would acquit." We think this charge did not put the burden upon the defendant to establish his innocence, but required the jury to believe from the evidence beyond a reasonable doubt that the appellant said and did what he was charged with, in which event they would find him guilty. As stated above, this court will not reverse misdemeanor cases unless the appellant excepts to the charge at the time, and requests special charges which are refused by the court, covering the point claimed to be an omission or error. This was not done in this case, and this assignment shows no reversible error.

Another assigned error is, in effect, that the verdict of the jury is contrary to the law and is not supported by the evidence, and then enumerates several particulars in which it is claimed that the testimony is insufficient. We have carefully gone over the testimony fully, and it is our opinion that the verdict of the jury is amply supported by the testimony. In fact, we think it clearly shows that appellant did and said all with which he was charged in the first and second counts of the indictment. It is true that some of his witnesses and he himself testified that he did not do and say all with which he is charged, some of them testifying they were close enough to have heard, and did not hear him say what the others testified they heard him say and do. All of this was for the jury to determine, and as there was ample evidence to sustain the verdict we can not set it aside, and the lower court did not err in not doing so.

The only other ground of the motion for a new trial is a complaint by the appellant to the admission of the testimony of Burl Roney, who testified over his objections. The record shows that there are three bills of exception, two of which are not mentioned in the motion for a new trial, nor the grounds thereof complained of in the motion. We will discuss these bills and this ground of the motion for a new trial together, as they all pertain to the same character of matter.

The first bill complains as follows: "That the State was permitted to introduce the following testimony, over the objection of defendant, of the witness Esther Yancy, a witness for the State, who testified for the State as follows: 'He (the defendant) was with me and another girl one night after the night of the 12th of February, and about the time this matter was being investigated before the grand jury, and he said if the preacher pulled him that he would shoot him

(meaning R. E. Morris, the preacher),' which testimony was then and there objected to at the time by the defendant upon the grounds that it was irrelevant and immaterial, and could serve no purpose except to prejudice the minds of the jury against the defendant; that all the proof in this case shows and will show that there had never been any controversy or ill-feeling between the preacher R. E. Morris and the defendant up to and during the time it is alleged in the indictment that the defendant disturbed the religious worship at Sharon church, if he did, on the night in question; that said testimony is too remote and indefinite to throw any light whatever upon this case, especially in view of the fact that the preacher does not testify that he even knew the defendant by his name until this special night, and that he, the said preacher, and the defendant had never had any trouble before said night; that it being a transaction occurring long after the offense is alleged to have been committed, and being no part of the real transaction, or *res gestae*," the court overruled the objections and admitted the testimony. In approving the bill, it is qualified by the court as follows: "The testimony was admitted for the purpose of showing animus of defendant, and to disprove his contention that the disturbance was not wilfully done, and as tending to connect the defendant with the offense, and as a tacit admission, and the court does not certify that the facts set up are true, as the statement of facts in the case show for themselves."

The next bill shows that the appellant objected to the following testimony by the witness Burl Roney: "The defendant came to my house between 12th and 22d of March, 1910, after the offense is alleged to have been committed and after the indictment had been returned in this case, and while there I sold him, or traded him a pocket-knife, and in a conversation with him then he, the defendant, said that he wanted that knife to use upon that damned preacher (meaning R. E. Morris), and that if the preacher fooled with him he would kill him." Substantially the same objection was made to this bill as to the testimony of the previous witness just stated, and the court, in approving the bill, qualified it substantially as he did the other.

The next bill shows that appellant objected to the testimony of the witness Elliott, who testified that he was present at the time the appellant traded for the knife with the witness Roney above detailed, and reiterated substantially the same testimony as the witness Roney above given. The appellant made substantially the same objection to the testimony of this witness as he did to the other two just above given, and the court, in allowing the bill, qualified it in substantially the same way.

The next bill, which is last, is to the testimony of the defendant himself, which the bill shows he was required to testify and did testify on cross-examination at the instance of the State, which testimony was as follows: "I walked with Miss Esther Yancy and Janie Swinney one night after the night of the 12th of February, 1910. While

I was walking with them. I did nòt tell them that if the preacher (meaning R. E. Morris) pulled me I would shoot him." Appellant made the same objections to this testimony substantially as he did to the testimony set out in the other bills above discussed, and the court, in allowing the bill, qualified it substantially as above stated.

It will be seen by each of these bills that they are insufficient to require this court to consider them, in that neither of them shows what the testimony in the case was, nor the status thereof, so that this court can judge from the bills of exception, which must be done, whether or not there was error. As the matter is shown, it is our opinion that the testimony was admissible for the reasons stated by the court in his qualification to the bills (McAdoo v. State, 35 S. W. Rep., 966), and whether this is true or not, the testimony of the other witnesses, other than his own, would have been admissible for the purpose of impeaching the appellant. Whether this was given by the judge as one of the reasons or not, these bills and neither of them show such a state of facts that we can tell therefrom whether the testimony was admissible to impeach the appellant or not. Hence there is no error pointed out and shown by these bills of exception, or any of them.

There being no reversible error in the record, the judgment is in all things affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.